UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

CORNELIUS FLOYD,

                Plaintiff,

- against -

MARC MORDECAI LIECHTUNG, DMD,
MARC MORDECAI LIECHTUNG, DMD. P.C.,
DAVID KASS, STEPHEN E. HILL,
STEVEN KOLINSKY, LAURIE HILL,
KOLINSKY HILL FINANCIAL GROUP, INC.,
ROY GLASSBERG, GRYPHON HILL, LLC,
SNAP ON SMILE LLC, SNAP-ON SMILE, INC.,
FIREFLY IPCO LLC f/k/a SOS IPCO, LLC,
FIREFLY ROYALTY OPCO LLC f/k/a
SOS OPCO, LLC, FIREFLY SMILE
HOLDING COMPANY f/k/a SOS HOLDING
COMPANY, LLC, GREG FELDMAN,
WELLSPRING CAPITAL MANAGEMENT
LLC, ROYAL ALLIANCE ASSOCIATES, INC.,
MICHAEL LOVERDE, CPA,
WILKIN & GUTTERPLAN, P.C., and
MOSES & SINGER, LLP.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 25, 2013

10 Civ. 4254 (PAC)

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

      On May 26, 2010, Plaintiff Cornelius Floyd ("Floyd" or "Plaintiff") initiated this fourteen-count action against twenty defendants for their participation in a scheme to defraud him of his almost $2 million investment in the Snap-on Smile ("SOS") business. Plaintiff alleges that his investment advisor, Stephen Hill, deceived him into investing in SOS by making false representations and omissions about SOS' financial condition, and invested more of Plaintiff's money than Plaintiff authorized.

1

In fall 2010, with exception to Defendants LoVerde, Wilkin & Gutterplan, P.C.,[1] and Stephen and Laurie Hill, the Defendants moved to dismiss the Complaint in six separate motions. After the motions were fully briefed, the Hills filed a Chapter VII Petition for Relief in Bankruptcy in the United States Bankruptcy Court for the District of New Jersey. Under 11 U.S.C. § 362(a), the filing imposed an automatic stay of the action against the Hill Defendants. The Court terminated the motions to dismiss on March 29, 2011, pending the Court's consideration of a possible stay against all Defendants. On July 27, 2012, on Plaintiff's motion and without objection from any Defendant, the Court severed the Hills from this action and reinstated all six motions to dismiss against the Hills' non-bankrupt co-defendants.

Plaintiff asserts claims pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 against SOS Holdings, OPCO, Hill and Kolinsky-Hill (Count One) and Gryphon-Hill, Glassberg, Laurie Hill, Stephen Hill, and Kolinksy-Hill (Count Two). In addition, Plaintiff asserts claims pursuant to Section 20(a) of the Exchange Act against Liechtung, Liechtung PC, SOS Inc., SOS LLC, SOS Holdings, OPCO, Hill, Kass, Feldman, Wellspring, and Kolinsky-Hill (Count Four), and Royal Alliance (Count Five). Plaintiff asserts his remaining claims under state law against various Defendants for negligent misrepresentation, common law fraud, conversion, common law breach of fiduciary duty, aiding and abetting the breach of fiduciary duty, and conspiracy to commit fraud, conversion, and the breach of fiduciary duty (Counts Three, Six through Fourteen).

---

[1] Wilkin & Gutterplan, P.C. is a firm of certified public accountants and consultants that has provided services to Plaintiff for more than fifteen years. (Id. ¶ 49.) Michael Loverde is a partner at Wilkin, who interacts with Plaintiff. (Id. ¶ 50.)

2

For the following reasons, the Court GRANTS Defendants' motions to dismiss Counts One, Two, Four and Five, and declines to exercise jurisdiction over Plaintiff's remaining claims.[2]

## BACKGROUND

A. The Parties

Snap-On Smile is a removable dental veneer that snaps over a patient's teeth. (Compl. ¶¶ 5, 6.) Its developer, Defendant Dr. Marc Liechtung, formed SOS, Inc. and SOS LLC to manufacture, distribute and sell the SOS product. (Id. ¶¶ 10, 11, 13, 14.) Liechtung PC is a professional corporation that owned various trademarks associated with the SOS product. (Id. ¶ 9.) SOS LLC is the sole managing member of SOS Holdings, of which SOS OPCO and IPCO are subsidiaries. (Id. ¶¶ 15, 16, 19, 24.) SOS Holdings, SOS OPCO and SOS IPCO are now known as Firefly Smile Holding Company, Firefly Royalty OPCO LLC, and Firefly IPCO LLC. (Id. ¶¶ 15, 18, 21.) SOS OPCO is an investment vehicle designed to "commercially exploit[ ] the SOS Product and SOS Patents and Trademarks, and to be the issuer of its securities in that connection." (Id. ¶ 20.)[3] At various times, Defendants Liechtung, David Kass, Greg Feldman and Roy Glassberg served as managers of SOS Holdings. (Id. ¶ 24.) Laurie Hill and Glassberg formed Gryphon Hill, LLC ("Gryphon-Hill") as an investment vehicle to accept money from investors seeking to invest in OPCO. (Id. ¶ 39.) Defendants Stephen Hill and Steven Kolinsky were Floyd's financial planners for fifteen years prior to this action. (Id. ¶ 33.) Hill and Kolinsky are officers and directors of Kolinsky-Hill Financial Group, Inc. ("Kolinsky-Hill"),

---

[2] The state law causes of action are brought pursuant to the Court's supplemental jurisdiction. Diversity jurisdiction does not exist because Floyd and Defendant Glassberg are residents of Florida. (Compl. ¶¶ 3, 36.) Defendant Gryphon-Hill, LLC was formed under the laws of Florida and maintains its principal place of business there as well. (Id. ¶ 38.)

[3] On May 31, 2008, Defendants reorganized the SOS entities in a "roll-up" transaction, allegedly in anticipation of the October 3, 2008 financing (discussed below). This roll-up consisted of a conveyance of assets and trademarks from SOS Inc. and SOS LLC to IPCO and OPCO. (Id. ¶ 99.)

which provides investment advisory, planning and wealth management services.  (Id. ¶¶ 30, 31, 32.)

  B.  Floyd's Investment in SOS

After an initial capital contribution, the SOS business started suffering financial difficulties.  Specifically, its expenses exceeded its cash flow and it became unable to meet obligations as they became due and payable.  (Id. ¶¶ 59, 60.)  In 2005 to 2006, Kass, the CFO of a private equity firm called Wellspring Capital Management, LLC, ("Wellspring") invested in the SOS business and took on the informal role of "director of corporate development."  (Id. ¶¶ 40, 41, 42, 64.)  Kass' responsibilities included raising additional capital by soliciting the sale of equity interests in SOS.  (Id. ¶¶ 25, 61, 62, 64, 67.)  Kass convinced Wellspring's CEO, Feldman, to invest as well.  (Id. ¶¶ 42, 61, 68, 69.)  Despite these capital injections, SOS' precarious financial situation continued through July 2008, when it became apparent that SOS could not continue without further funding.  (Id. ¶ 75.)

Kass contacted Hill, whom he knew "was in the business of soliciting and obtaining capital and/or financing from high net worth clients of Kolinsky-Hill."  (Id. ¶ 82.)  Kass, Liechtung, and Feldman promised Hill fees and/or equity in SOS, if Hill successfully raised capital for the business.  (Id. ¶ 83.)  Hill informed them that he had high-net-worth clients, including Floyd, who played major league baseball, and felt confident that one of them would invest.  (Id. ¶¶ 85, 89, 90.)  Hill attempted to set up a meeting between Liechtung, Kass, and Floyd, but that meeting never occurred.  In fact, "Hill never produced Plaintiff for a meeting with any of said Defendants."  (Id. ¶ 92.)  Nonetheless, Hill himself solicited Floyd between August and October of 2008 by email, telephone calls, and visits to Floyd's home in Florida.  (Id. ¶ 93.)

4

In Hill's discussions with Floyd, who initially "balked" at the idea, Hill recommended that Floyd invest a modest amount, approximately $100,000 in SOS, with increases overtime, not to exceed $300,000. (Id. ¶¶ 137, 142.)[4] Hill explained that SOS' business involved very little risk, sales were going very well, the company was making a profit, and several companies were competing to buy SOS. (Id. ¶ 144.) Further, the investment opportunity would permit Floyd to invest relatively small amounts with an excellent return (approximately half) within six months to a year. (Id.) Based on Hill's representations, Floyd orally agreed to invest $100,000. (Id. ¶ 145.) These representations are alleged to be materially false because Hill intended to invest substantially more than $100,000 of Plaintiff's funds, the SOS business was not profitable, and absent further investments, its cash-flow difficulties would likely force the company to stop operating or to sell its operations. (Id. ¶ 152)

Plaintiff contends that with the assistance of an employee at Kolinsky-Hill and Defendant Loverde, Floyd's accountant, Hill forged Plaintiff's signature on a wire instruction and transferred approximately $1,800,000 of Plaintiff's funds from his account at Royal Alliance to SOS OPCO's account at Commerce Bank. (Id. ¶¶ 152, 157, 178.) Kass and Liechtung, along with certain other unspecified Defendants, then transferred Floyd's funds from OPCO to Gryphon-Hill. (Id. ¶¶ 157, 158.) On October 3, 2008, OPCO and SOS Holdings issued two secured promissory notes, one to Feldman in the amount of $750,000 and the second to Gryphon-Hill in the amount of $2,000,000. (Id. ¶¶ 101, 102.)[5] Plaintiff contends that his money

---

[4] These recommendations were made in anticipation of Floyd's more limited income after his pending retirement from major league baseball and his stated desire to avoid investments. (Id. ¶¶ 135, 137.)

[5] The notes bore interest at a rate of 20% with quarterly payments of interest in the form of cash beginning Dec. 31, 2009. (Id. ¶ 102). In return, Feldman and Gryphon-Hill received $2,627,757 in limited liability membership interests in SOS Holdings, representing approximately 17% of its membership interests, and $30 for each case of SOS products sold until the notes were re-paid in full. (Id. ¶¶ 102, 104.) In addition, IPCO granted to Feldman and Gryphon-Hill a security interest in SOS' Patents and Trademarks. (Id. ¶ 112.)

was used to purchase the note sold to Gryphon-Hill. (Id. ¶¶ 115, 125, 126.) The purported purpose of shifting Plaintiff's funds to Gryphon-Hill was to disguise the fact that Plaintiff was the true purchaser of the SOS securities. (Id. ¶¶ 124, 157.)[6]

In or around November 19, 2009, without disclosing the previous transfer of $1,800,000 from Floyd's account, Hill solicited Floyd to invest an additional $150,000. (Id. ¶¶ 146-148.) Plaintiff again orally agreed to invest the additional capital, and on November 19, 2009, a further sum of $150,000 was transferred from Floyd's account to OPCO's. (Id. ¶ 157.) Floyd does not recall giving specific written authorization for the transfer of any of his money. (Id. ¶¶ 145, 157.) Further, Floyd was not issued any evidence of his equity ownership of or investment in SOS Holdings and/or OPCO. (Id. ¶¶ 126, 158.) In April 2010, Floyd demanded from Liechtung, Kass and Moses & Singer, LLP,[7] the return of his entire investment in OPCO and SOS Holdings, amounting to $1,950,000. (Id. ¶ 181.) Defendants refused and litigation commenced. (Id. ¶¶ 182, 183, 185, 186.)

## DISCUSSION

I.   General Motion to Dismiss Standard

Fed. R. Civ. P. 12(b)(6) requires the court to "accept as true all of the factual allegations contained in the complaint," and construe the complaint in the light most favorable to the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572 (2007); see Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). The court only "assess[es] the legal feasibility of the complaint"; it does not

---

[6] Plaintiff contends that Gryphon-Hill was formed just one month prior to the October 3, 2008 transactions by Laurie Hill and Glassberg. (Id. ¶¶ 39, 159.) Floyd never intended to invest in Gryphon-Hill, but only directly in the SOS business. (Id. ¶ 159.)

[7] Moses & Singer, LLP provided counsel in connection with the October 3, 2008 financing transaction and SOS' "roll up." (Id. ¶¶ 52-53, 158.)

"assay the weight of the evidence which might be offered in support thereof." Levitt v. Bear Stearns & Co., 340 F.3d 94, 101 (2d Cir. 2003).

II.     Heightened Pleading Standard of Rule 9(b) and the PSLRA

A securities fraud claim under Section 10(b) of the Exchange Act and Rule 10b-5 must satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b) and the PSLRA. ATSI Communs., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). Fed. R. Civ. P. 9(b) requires that for complaints alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake." This standard requires the plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Stevelman v. Alias Research Inc., 174 F.3d 79, 84 (2d Cir. 1999). Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Id. Further, under the PSLRA, in an action for money damages requiring proof of scienter, "the complaint [must] . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

III.    Section 10(b) and Rule 10b-5 (Claims One and Two)

Section 10(b) of the Exchange Act prohibits any person from using or employing "any manipulative or deceptive device or contrivance in contravention" of SEC rules. 15 U.S.C. § 78j(b). Rule 10b-5 prohibits "any device, scheme, or artifice to defraud" and "any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading . . . ." 17 C.F.R. § 240.10b-5. To state a claim under Rule 10b-5, plaintiffs must allege that defendants "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which

7

plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172 (2d Cir. 2005).

   A. No Misstatements or Omissions by non-Hill Defendants

Section 10(b) and Rule 10b-5 do not recognize aiding and abetting theories of liability. Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 177 (1994). Instead, Section 10(b) liability mandates actual false or misleading statements or omissions to be made by defendants. Pac. Inv. Mgmt. Co., LLC v. Mayer Brown LLP, 603 F.3d 144, 155 (2d Cir. 2010) (citing Shapiro v. Cantor, 123 F.3d 717, 720 (2d Cir. 1997)).[8] Crutially, the Complaint fails to allege that any Defendants, other than Hill, made any representations to Plaintiff. (Compl. ¶ 118.) In fact, it concedes that none of the non-Hill Defendants ever met with or spoke to Plaintiff about the SOS business. (Id. ¶ 92.) Rather, the Complaint maintains that the non-Hill Defendants knew or should have known of the Hills' deceptions.

Plaintiff has not alleged any actionable omissions against the non-Hill Defendants. A duty to speak arises when a disclosure is required to make previous representations not misleading or false. In re Bristol Myers Squibb Co. Sec. Litig., 586 F. Supp. 2d 148, 160 (S.D.N.Y. 2008) (citing Glazer v. Formica Corp., 964 F.2d 149, 157 (2d Cir. 1992)). As Plaintiff has not alleged that the non-Hill Defendants made any representations to Floyd, they could not have had a duty to disclose on this basis. The duty to speak may also arise "from a relationship of trust and confidence between parties to a transaction." Chiarella v. United States, 445 U.S. 222, 230 (1980). With exception of Kolinsky and Kolinsky-Hill, the other non-Hill Defendants had no relationship of trust or confidence with Plaintiff and owed Plaintiff no fiduciary duties. They were not investment, financial advisors, or even direct business partners. Kolinsky and

---

[8] Although "secondary actors can be liable in a private action under Rule 10b-5 for . . . those statements that are explicitly attributed to them," the Complaint does not allege that any Defendants explicitly adopted any statement made by Hill. Pacific Inv. Mgmt. Co., 123 F.3d at 155.

Kolinsky-Hill, on the other hand, were Plaintiff's long-time financial advisors, but the Complaint does not allege any facts showing that Kolinsky knew that Hill was soliciting Floyd's investment in the SOS business. (Compl. ¶ 33.) There may be a duty to disclose "where one of two parties in a securities transaction 'possesses superior knowledge, not readily available to other, and knows that the other is acting on the basis of mistaken knowledge.'" Vento & Co., LLC v. Metromedia Fiber Network, 1999 U.S. Dist. LEXIS 3020, at *26 (S.D.N.Y. 1999) (citation omitted). None is alleged here. Rather, the Complaint relies on the conclusory allegation that "each of [the] Defendants knew or should have known that Hill materially and intentionally misstated the underlying facts and circumstances to Plaintiff." Particularity aside, the Complaint does not allege any facts indicating that the non-Hill Defendants knew that Plaintiff was acting on a mistaken belief, or that Floyd was purportedly deceived into investing in SOS. (Compl. ¶¶ 118, 171.)

   B.  No Statements Imputed on the Basis of Agency

Notwithstanding the fact that the non-Hill Defendants themselves did not make any misstatements or omissions, Plaintiff argues that they are liable nonetheless under Section 10(b) and 10b-5 because Hill's misstatements may be imputed to them under an agency theory of liability. A plaintiff may allege that a corporate entity violated Section 10(b) based on the misrepresentations of its agents or employees. JHW Greentree Capital, L.P. v. Whittier Trust Co., 2005 U.S. Dist. LEXIS 27156, at *14 (S.D.N.Y. 2005); see Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 101 (2d Cir. 2001) ("Central Bank did not eliminate primary liability for business entities.")). "'[A]n agency relationship results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act.'" Cromer Fin., Ltd., 2002 U.S. Dist. LEXIS 7782, at

*11 (quoting N.Y. Marine & Gen. Ins. Co. v. Tradeline, L.L.C., 266 F.3d 112, 122 (2d Cir. 2001))[9]

Here, Hill did not act as an agent of Kolinsky-Hill, Gryphon-Hill or SOS Holdings/OPCO. With regard to Kolinsky-Hill, the Complaint does not allege any facts that support the inference that Kolinsky-Hill knew that Hill intended to solicit Plaintiff for an investment in SOS, let alone that Kolinsky-Hill authorized or controlled such a solicitation. The Complaint also does not suggest that Hill acted for the benefit of Kolinsky-Hill. Maung Ng We v. Merrill Lynch & Co., 2000 U.S. Dist. LEXIS 11660, at *26 (S.D.N.Y. 2000) ("[An] important feature of an agency relationship is that the actions taken by the purported agent are taken . . . for the benefit of the principal—not the agent."). Specifically, Plaintiff did not allege that Kolinsky-Hill would receive the any fees or commissions from Hill's attempts to raise capital for SOS,[10] or that Kolinsky-Hill would receive any portion of Floyd's investment. Rather, the Complaint states that "one or more other Defendants, promised and represented to Hill that he would receive various economic benefits" and that Hill acted in his individual capacity outside of Kolinsky-Hill. (Compl. ¶¶ 35, 83, 152(viii).)

With regard to Gryphon-Hill,[11] Plaintiff does not contend that Hill was an employee, or was explicitly authorized to solicit investments on its behalf. Apparent authority is also lacking

---

[9] Defendant Kolinsky-Hill relies on New Jersey law while SOS Defendants rely on New York law for agency principles. There is no substantive difference between the two and the parties identify none. In New Jersey, "[a]n agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." Glielmi v. Raymond Corp., 2012 U.S. Dist. LEXIS 156548, at *11 (D.N.J. 2012). As there are no distinctions that are relevant here, the Court need not choose which body of law to apply.

[10] Floyd's assertion to the contrary states that Kolinsky-Hill would gain only indirectly through Hill: "Hill, and thus, Kolinsky-Hill could derive economic and financial benefits." (Compl. ¶ 131.) It does not appear that Hill was working for the benefit of Kolinsky-Hill if any fees would accrue directly to himself.

[11] Gryphon-Hill is an "investment vehicle" created to receive money from investors to purchase securities from OPCO. (Id. ¶¶ 124, 39.)

because Gryphon-Hill, through its creators Laurie Hill and Glassberg, never represented Stephen Hill to Floyd as an agent of Grypon-Hill.  Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading, Inc., 697 F.3d 59, 71 (2d Cir. 2012) (noting that the existence of apparent authority depends on a third party's reasonable belief of agency that is traceable to the principal's manifestations.)  In fact, the Complaint contends that Floyd had never heard of Gryphon-Hill.  (Compl. ¶¶ 132, 152(iv), 158(xii), 159(i).)

The Complaint's only contentions that touch on Hill's status as SOS Holdings/OPCO's agent are that "Hill's representations to Plaintiff . . . were made . . . upon the authority of, and were made for and on behalf of, each of SOS Holdings and OPCO" and that "SOS Inc., and SOS Holdings . . . actively solicited Hill . . . to solicit Plaintiff to invest in and or loan moneys to SOS Holdings and/or OPCO in the sum of $1,950,000, or more."  (Id. ¶¶ 152, 171.)  These allegations do not show that Hill and the SOS entities agreed that Hill would act on their behalf or would be subject to their control.  In re Amaranth Natural Gas Commodities Litig., 587 F. Supp. 2d 513, 532 (S.D.N.Y. 2008) ("[T]he principal must maintain control over key aspects of the undertaking.").  Further, the Complaint fails to allege that Hill made the purported misstatements in the scope of his duties or employment, as Hill was not an employee of the SOS entities.

With respect to Glassberg, the Court assumes that a non-corporate, individual principal may be liable for the statements of his or her agents.  E.g., Rickel & Assocs Inc. v. Smith (In re Rickel & Assocs.), 272 B.R. 74, 95 n.13 (Bankr. S.D.N.Y. 2002) (interpreting Suez, 250 F.3d at 101, as stating a general principle of agency not limited to corporations).  The Complaint does not allege that Glassberg authorized Hill to make any statements to Floyd.  Plaintiff's assertions to the contrary, which refer to all Defendants as an undifferentiated group, are insufficient.  (See

Compl. ¶ 171.)[12]  "[R]eliance is the critical element in private actions under Rule 10b-5." Pac. Inv. Mgm't Co. LLC, 603 F.3d at 156.  There can be no Section 10(b) or Rule 10b-5 liability without any allegations substantiating Floyd's reliance on a material misstatement or omission by one with the duty to speak.

Accordingly, Claims One and Two against Defendants other than Stephen and Laurie Hill are dismissed.[13]  The Court makes no determination with regard to the Hills' liability for securities fraud.

IV.     Section 20(a) (Claims Four and Five)[14]

To state a claim under 20(a), plaintiffs must allege (a) a primary violation by a controlled person, and (b) control by the defendant of the primary violator.  Section 20(a) also requires that plaintiff allege culpable participation in some meaningful sense by the controlling person in the fraud.  ATSI, 493 F.3d at 108.  The PSLRA's heightened pleading requirements apply to Section 20(a) claims.  Police & Fire Ret. Sys. v. SafeNet, Inc., 645 F. Supp. 2d 210, 227 (S.D.N.Y. 2010).

The allegations of a primary violation by non-Hill Defendants are insufficient, so there can be no control person liability for their violations.  See id. at 241.  Further, Plaintiff's

---

[12] It is not enough for Plaintiff to assert that all twenty defendants "implored" Hill to make misrepresentations to Plaintiff.  Plaintiff's bald assertion that all Defendants "authori[zed] and induc[ed] Hill to solicit Plaintiff's investment," standing alone, does not present enough factual material to support the inference that each of them did so. (Compl. ¶¶ 161, 169.)  See Degulis v. LXR Biotechnology, Inc., 928 F. Supp. 1301, 1311 (S.D.N.Y. 1996) ("Rule 9(b) is not satisfied by [a] complaint in which defendants are clumped together in vague allegations.").  Plaintiff cannot rely on group pleading because that doctrine involves group publications and does not apply here.  See In re Pfizer Inc. Sec. Litig., 584 F. Supp. 2d 621 (S.D.N.Y. 2008).  Similarly, the Court rejects Plaintiff's attempts to impute any liability to Defendants on the basis of their participation in an "enterprise" that he calls "FRAUDCO."  (P. Opp. at 7-8.)  Plaintiff has cited no authority applying "enterprise" as defined in 18 U.S.C. § 1961(4) in the RICO context to federal securities law actions.

[13] These Defendants are Kolinsky-Hill, Gryphon-Hill, SOS Holdings, OPCO, and Glassberg.

[14] Plaintiff failed to assert a Section 20(a) claim against Gryphon-Hill in his Complaint, but did so for the first time in his opposition papers.  (P. Opp. 30-31.)  In deciding a motion to dismiss, the Court will not consider new allegations that are raised in opposition briefs.  Simone v. U.S., No. 09 Civ. 3904, 2012 WL 4891617, at *6 (E.D.N.Y. Oct. 9, 2012) (citations omitted).

allegations that Defendants controlled Hill are insufficient.  "Control over a primary violator may be established by showing that the defendant possessed 'the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'"  First Jersey, 101 F.3d at 1472-73 (quoting 17 C.F.R. § 240.12b-2).  "[T]he Section 20 (a) defendant must not only have actual control over the primary violator, but have actual control over the *transaction* in question."  Cohen v. Stevanovich, 722 F. Supp. 2d 416, 435 (S.D.N.Y. 2010) (quotations omitted) (emphasis in original).

To adequately plead culpable participation, "Plaintiffs must plead at a minimum particularized facts establishing a controlling person's conscious misbehavior or recklessness in the sense required by Section 10(b)."  Cohen, 722 F. Supp. 2d at 435.  Section 20(a) plaintiffs must allege with particularity that the controlling person knew or should have known that the primary violator was engaging in fraudulent conduct.  In re Global Crossing, 2005 U.S. Dist. LEXIS 16228, at *18 (S.D.N.Y. Aug. 8, 2005).

A. Control

Floyd has failed to plausibly allege that any of the non-Hill Defendants had "the power to direct or cause the direction of the management and policies of a person," here, Hill.  First Jersey, 101 F.3d at 1472-73.[15]  The Complaint also fails to adequately allege that Defendants controlled the specific transactions in question: Hill's statements to Floyd and the purported misappropriation of Floyd's money.  Cohen, 722 F. Supp. 2d at 435.  While the Complaint makes numerous allegations that Hill's scheme to defraud would not have succeeded but-for Defendants' involvement, "even significant participation in [a primary violator's] scheme to

---

[15] Plaintiff contends that various Defendants were control persons of the SOS Entities, Gryphon-Hill and Kolinsky-Hill.  (P. Opp. at 9.)  Since the Court has dismissed the Section 10(b) and Rule 10b-5 claims against these entities, they are not the relevant primary violators in the control liability analysis.

13

defraud is not equivalent to directing [the primary violator] to engage in that scheme." See Fezzani v. Bear, Stearns & Co., 384 F. Supp. 2d 618, 646 (S.D.N.Y. 2004).

B. Culpable Participation

Plaintiff has failed to allege particularized facts that supporting the "strong inference" that any of the Defendants knew or should have known that (1) Hill misstated and failed to disclose aspects of SOS' financial condition; and (2) that Floyd did not authorize the full amount transferred to OPCO. The SOS Defendants' knowledge of the circumstances of Hill's alleged fraud can be summarized as follows:

- Defendants failed to provide prospectuses, private offering memoranda or other disclosure materials for Hill's use in soliciting Plaintiff. (Compl. ¶ 160.)
- Defendants did not issue any "Information Return" in connection with Gryphon-Hill's loan/equity investment. (Id. ¶ 159.)
- Feldman, Kass and Liechtung asked Hill to solicit Floyd to invest in and/or loan $1,950,000 to SOS Holdings/OPCO, when they knew that Hill's fiduciary status as Floyd's financial planner presented a conflict of interest. (Id. ¶¶ 168, 171.)
- Kass, Liechtung, and OPCO/SOS Holdings accepted money in OPCO's account from Floyd and then wired it to Gryphon-Hill. (Id. ¶¶ 158, 159.)

These facts are insufficient to meet the PSLRA's "strong inference" standard. The Complaint does not plausibly allege these Defendants were privy to details of Floyd's investment philosophy, or otherwise knew or should have known that Floyd's investment in SOS was ill-advised. Further, there were no "red flags" alerting Defendants to the possibility that Plaintiff did not previously authorize the amount transferred to OPCO. The wire transfers themselves are innocuous absent any allegations of Defendants' knowledge of the relationship, or lack of thereof, between Floyd and Gryphon-Hill.

The Complaint alleges even less with respect to Kolinsky-Hill. As mentioned above, the Complaint does not set forth particularized facts suggesting that Kolinsky-Hill knew or should have known about Hill's solicitation of Floyd, or that any money was transferred from Floyd's

14

account. The stand-alone assertion that Kolinsky-Hill "agreed to assist Defendants in attempting to raise . . . necessary additional capital" does not rise to the level of conscious misbehavior or recklessness. (Compl. ¶ 84.)

Finally, Floyd contends that Royal Alliance affixed two signature guarantees to a wire instruction bearing Floyd's forged signature without confirming the signature's authenticity. (Id. ¶¶ 175-79.)[16] Plaintiff's allegations amount to negligence, not fraud. See In re Livent, 151 F. Supp. 2d 371, 416-17 (S.D.N.Y. 2001). Plaintiff has failed to allege any circumstances under which Royal Alliance knew or should have known that the transfer of Plaintiff's funds to OPCO was unauthorized. In fact, Floyd specifically excludes Royal Alliance from his allegations of wrongdoing with respect to Hill's misrepresentations and the fraudulent transfer of Floyd's funds. (Compl. ¶¶ 129, 156(xiv), 231, 240, 160-174.)

V.      Leave to Amend the Complaint

Fed. R. Civ. P. 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." "It is the usual practice upon granting a motion to dismiss to allow leave to replead." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991). While the Court concludes that Plaintiff's complaint insufficiently links Defendants to Hill's statements to establish primary liability, and inadequately alleges Defendants' control and culpable participation to establish control person liability, the Court "cannot determine that the plaintiff could not, under any circumstances, sufficiently allege his claims." In re Vivendi Universal, 381 F. Supp. 2d 158, 192 (S.D.N.Y. 2003) (citation and quotation omitted). Plaintiff is granted leave to file an amended complaint, but the Court notes that the more remote the party is to Hill's

---

[16] Royal Alliance is a broker and dealer of securities. (Id. ¶ 43.) When Hill and Kolinsky-Hill became Associated Persons of Royal Alliance, they transferred their clients' cash and securities accounts to Royal Alliance. (Id. ¶¶ 47, 175.)

alleged representations, the less likely it is that the party violated the securities law or may be deemed a control person.

## CONCLUSION

The Court grants the motions at docket numbers 11, 30, 39, 42, 47, and 49. The Clerk of the Court is directed to terminate these motions. The Court dismisses Claims One, Two, Four, and Five against Defendants other than Stephen and Laurie Hill. This action remains viable against the Hills but is stayed due to bankruptcy. This action also continues against Defendants LoVerde and Wilkin & Gutterplan, P.C. for failure to move to dismiss the Complaint.

Dated: New York, New York
       March 25, 2013

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge